UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-61333-CIV-ALTMAN/Reid

**STEVEN PARRISH**,

    *Plaintiff*,

v.

**FLORIDA DEPARTMENT OF CORRECTIONS**, *et al*,

    *Defendants*.

_____/

## **ORDER**

On July 2, 2020, the *pro se* Petitioner, Steven Parrish ("Parrish"), filed a petition seeking a writ of *habeas corpus* under 28 U.S.C. § 2254. *See* Petition [ECF No. 1]. In the Petition, Parrish advances two claims of ineffective assistance of counsel. *First*, he says that his lawyer should have moved for a "bill of particulars." *Second*, he argues that his lawyer should have called five "alibi" witnesses at his criminal trial. But, because Parrish doesn't even attempt to show that the state court's rejection of these claims was contrary to clearly established federal law, the Petition must be denied.

## **THE FACTS**

A state jury convicted Parrish of three counts of sexual battery on a child and two counts of lewd or lascivious molestation. *See* Opinion Denying Rule 3.850 Motion [ECF No. 3-1] ¶¶ 1–2.[1] For these heinous crimes, a state judge sentenced Parrish to life in prison. *See* Pet. at 1. After

---

[1] In its Order Denying Rule 3.850 Motion, *see* [ECF No. 3-1] at 1, the state court adopted the State's Response to Parrish's Rule 3.850 Motion, *see* [ECF No. 3-1] at 2–15, as its opinion. *See* Order Denying Defendant's Motion for Post-Conviction Relief at 1 ("[T]he Defendant's Motion for Post-Conviction Relief is hereby **denied**, for reasons set for in the State's response, which are incorporated by reference herein."). This Court, therefore, will refer to that incorporated Response as the "Opinion Denying Rule 3.850 Motion."

the Fourth District Court of Appeal ("Fourth DCA") affirmed Parrish's conviction and sentence, *see Parrish v. State*, 261 So. 3d 555 (Fla. 4th DCA 2018) (table), Parrish elected not to file a petition for *certiorari* with either the Florida Supreme Court or the U.S. Supreme Court, *see* Pet. at 2–3.

Parrish, though, did timely file a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. *See* Pet. at 4. In it, Parrish argued that "[c]ounsel provided ineffective assistance of counsel when counsel failed pre-trial to move for an order directing the State to provide a bill of particulars giving a definitive time, date, and place for when and where alleged offenses were committed, said error by omission by counsel denied Petitioner of his right to present a complete defense including that of alibi witnesses." *Id.* at 5.[2] As to this last point, Parris argued that "[c]ounsel provided ineffective assistance when counsel failed to call and present the testimony of five (5) alibi witnesses[.]" *Id.* After review, the state trial court denied this motion, *see* Order Denying Rule 3.850 Motion, and the Fourth DCA affirmed, *see Parrish v. State*, 292 So. 3d 1178 (Fla. 4th DCA 2020) (table).

Parrish then timely filed this Petition, which is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254; *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003) ("Because respondent's federal habeas corpus application was not filed until after AEDPA's effective date [April 24, 1996], that application is subject to AEDPA's amendments [to the habeas statute].").

---

[2] Parrish described his Rule 3.850 claims in his Petition. Giving Parrish the benefit of the doubt, the Court assumes that he has accurately summarized the claims he advanced in the state courts. This assumption, of course, only redounds to Parrish's benefit, because—had he not, as he insists, made these claims in state court—his federal claims would be unexhausted and subject to dismissal. *See* 28 U.S.C. § 2254(b)(1)(A) (habeas is unavailable until "the applicant has exhausted the remedies available in the courts of the State").

On July 7, 2020, this Court took judicial notice of the underlying state court docket and its accompanying judicial records.[3] *See* Order [ECF No. 3] at 1; *cf. Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) ("Federal Rule of Evidence 201 permits a court to 'judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' State court records of an inmate's postconviction proceedings generally satisfy this standard." (cleaned up)). Specifically, the Court took judicial notice of three documents: (1) the state court's Order Denying Rule 3.850 Motion; (2) the State's Response to Parrish's Rule 3.850 Motion (hereinafter the state court's "Opinion Denying Rule 3.850 Motion"); and, (3) five pages of the transcript of Parrish's trial ("Trial Transcript") [ECF No. 3-1] at 16–20.

## THE LAW

### I. The Summary Dismissal Standard

Rule 4 of the Rules Governing Section 2254 Cases provides as follows: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . . , the judge must dismiss the petition." Rule 4, Rules Governing Section 2254 Cases, *as amended* Dec. 1, 2019; *see also Mayle v. Felix*, 545 U.S. 644, 654 (2005) ("A discrete set of Rules governs federal habeas proceedings launched by state prisoners.").

"This preliminary review calls on a district court to perform a screening function, ordering summary dismissal where a petition makes no meritorious claim to relief." *Paez*, 947 F.3d at 653; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face[.]" (citation omitted)).

---

[3] Parrish did not object to the Order of Directions to the Clerk, *see* [ECF No. 3]; nor did he ever contest the authenticity of the documents contained on the state-court docket, *see generally* Docket.

"Both a procedural bar and a merits-based deficiency could lead a district court to conclude that petitioner is 'not entitled to relief.'" *Paez*, 947 F.3d at 654. Rule 4 does not require "briefing before a district court disposes of a habeas petition," because "Rule 2(c) [of the Rules Governing Section 2254 Cases] provides that the petition must specify all grounds for relief, state the facts supporting all grounds, and state the relief requested." *McNabb v Comm'r, Ala. Dep't of Corr.*, 727 F.3d 1334, 1339–40 (11th Cir. 2013).

While this Court must review *pro se* petitions liberally, *see Enriquez v. Fla. Parole Comm'n*, 227 F. App'x 836, 837 (11th Cir. 2007) ("Construing the petition liberally, as we are required to do because it was filed *pro se* . . ." (cleaned up)), this Court may not "serve as de facto counsel or [] rewrite an otherwise deficient pleading in order to sustain an action." *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 716 n.3 (11th Cir. 2011).

## II.   AEDPA Exhaustion

AEDPA requires petitioners to file their federal habeas petitions within one year of the date on which their convictions became final. *See* 28 U.S.C. § 2244(d)(1). AEDPA also requires "total exhaustion"—each of the petition's claims, in other words, must have been "fairly presented" to the state courts for adjudication. 28 U.S.C. § 2254(b)(1)(A); *see also Rhines v. Weber*, 544 U.S. 269, 274 (2005) ("AEDPA preserved *Lundy*'s total exhaustion requirement[.]").

## III.   AEDPA Merits Review

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state court proceeding, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable

4

determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)).

To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court does not include any reasons for its denial of the collateral attack, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

"Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United State Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Harrington*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To

5

satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*. at 316 (quotation marks omitted).

### IV.   Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner must satisfy each of the *Strickland* standard's two prongs. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "This requires showing that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

Starting with the first ("deficient performance") factor, "the proper standard for attorney performance is that of reasonably effective assistance." *Id*. Specifically, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688. In making this determination, courts must consider "all the circumstances." *Id*. But "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id*. (cleaned up). For this reason, "[s]trategic choices made after thorough investigation of the law and facts relevant to plausible options are *virtually unchallengeable*." *Id.* at 690–91 (emphasis added). This is because "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013). Courts should remember, in other words, that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The Court's review of counsel's performance, therefore, should focus "not [on] what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000); *see also Burger v. Kemp*, 483 U.S. 776 (1987) (same).

Finally, conclusory allegations of ineffectiveness are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012) ("Taking these vague and conclusory allegations together, the Alabama Court of Criminal Appeals determined that Boyd's claim fell far short, on its face, of establishing either *Strickland*'s performance or prejudice prong.").

Turning to *Strickland*'s second ("prejudice") prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. Note, however, that a court need not address both *Strickland* prongs if the petitioner fails to carry his burden as to one of those prongs. *See id*. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

When a habeas petitioner challenges a state court's determination of a previously raised claim of ineffective assistance of counsel, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (cleaned up); *see also id*. ("And, because *Strickland*'s is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). In other words, because the standards that *Strickland* and § 2254(d) create are both

"highly deferential," review is "doubly" so when the two apply in tandem. *Harrington*, 562 U.S. at 105.

## ANALYSIS

While AEDPA's procedural strictures can be complex, they are (for two reasons) not at issue here. *First*, although Parrish does not say precisely when the Fourth DCA issued its mandate, it must have been *after* that court published its *per curiam* affirmance in March of 2020. *See Parrish*, 292 So. 3d at 1178. Because Parrish filed his petition on July 2, 2020—just four months later—his petition is timely. *See* Pet. at 1. *Second*¸ Parrish's Petition advances only two claims, both of which he has already presented to the state court. *See* Opinion Denying Rule 3.850 Motion ¶ 13. Parrish, then, has properly exhausted both claims. With these procedural hurdles satisfied, the Court now turns to the merits of each claim.

### I. Claim One: Counsel's Failure to Request a Bill of Particulars

Parrish criticizes his state trial counsel for failing to move for a bill of particulars. *See* Pet. at 5. Specifically, he says that the State's charging document (an information) did not give "specific dates, times, and places of when and where [he] was alleged to have committed the offenses." *Id.* It "simply alleged that [he] committed the offenses between . . . December 1, 2011, and March 31, 2012. . . . [and] failed to allege any definitive location [] where the offenses were . . . committed." *Id.* at 5–6. Accordingly, he alleges, "prior to trial, the Petitioner asked counsel to move before the state court a motion for an order directing the State to provide a more definitive statement commonly known as a 'bill of particulars[.]'" *Id.* at 5. Counsel's failure to follow through on this request, Parrish avers, constituted a "serious unprofessional error," which ultimately precluded Parrish from "put[ting] forth any defense in a strictly she said[/]he said case." *Id.* at 6.

The state court rejected this claim because "the record and the law demonstrate[d] that even if counsel had requested a statement of particulars, the State would not have been able to narrow

9

the time frame *nor would they have been legally required to*. The victims were 4, 7, 8 and 10 years old at the time of the offenses and were unable to recall the exact dates or times of [sic] the offenses occurred." Opinion Denying Rule 3.850 Motion at 11 (emphasis added). The Fourth DCA affirmed this decision without an opinion. *See Parrish*, 292 So. 3d at 1178.

This Court's review of that decision is narrow. In essence, this Court must determine only whether the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington*, 562 U.S. at 97–98 (summarizing 28 U.S.C. § 2254(d)–(e)).

Parrish cites no Supreme Court law at all. *See* Pet. at 5–7. In fact, he does little more than mechanically state the habeas standard without ever explaining *how* the state court's decision was contrary to federal law. For this reason alone, his claim is insufficient and must be denied. *See* 28 U.S.C. § 2254(d); *see also Stevenson v. Scutt*, 531 F. App'x 576, 580 (6th Cir. 2013) ("Stevenson fails to identify, however, the specific precedent on which he relies. . . . Under AEDPA, if there is *no* clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail."); *House v. Hatch*, 527 F.3d 1010, 1022 (10th Cir. 2008) ("We likewise reject Mr. House's attempt to extrapolate clearly established law from general equal protection principles in the absence of a Supreme Court holding on point. . . . To demonstrate that the law is clearly established, Mr. House must do more than identify a generalized legal principle."); *Jennings v. Johnson*, 1999 WL 47010, at *6 (5th Cir. 1999) ("Jennings offers only a conclusory statement in support of this argument-he fails to explain how the failure of the

10

appellate court to allow Jennings's habeas counsel to intervenue [sic] rendered his trial fundamentally unfair, and he cites no case law in support of his contention.").[4]

In any event, the state court's decision was not at all unreasonable. In rejecting Parrish's claim, the trial court found that, even if counsel *had* moved for a bill of particulars, that motion would have been denied. *See* Opinion Denying Rule 3.850 Motion at 11 ("[N]or would [the State] be legally required to [issue a bill of particulars]."). And "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citation omitted). Since Florida law foreclosed any such motion for a bill of particulars, Parrish's counsel cannot be blamed for not having filed one. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim." (citation omitted)).

Claim One, in short, should be denied.

### II.     Claim Two: Counsel's Failure to Call Alibi Witnesses

Parrish also blames his lawyer for failing to call five "alibi" witnesses. *See* Pet. at 8. Parrish argues that his lawyer should have called these witnesses because they "would not just have accounted for practically every minute of petitioner's day (during the time he was alleged to committed [sic] the crimes) but they also would have testified as to the victims' motives to lie. All 5 witnesses knew of the petitioner's very strained relationship with the victims' mother as well as her mental illness. It was petitioner's intent that counsel call these witnesses to show he could not

---

[4] Because Parrish makes no showing of deficiency, the Court need not even address *Strickland*'s second (prejudice) prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

have committed the offenses and to further show the jury that the victims were coerced to lie by their mother." Pet. at 9.

The state court rejected this claim after finding that: (1) Parrish had "knowingly and intelligently waived his right to call witnesses"; (2) Parrish's allegations were "based on speculation"; (3) Parrish "fail[ed] to specify what each particular witness would have testified to and how such testimony would have reasonably made a difference in the outcome of his trial"; and (4) Parrish declared, in open court at trial, that "he was satisfied with his attorney," Opinion Denying Rule 3.850 Motion at 13. The Fourth DCA affirmed this ruling without comment. *See Parrish*, 292 So. 3d at 1178.

Again, this Court will disturb this ruling only if it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts[.]" *Harrington*, 562 U.S. at 97–98 (summarizing 28 U.S.C. § 2254(d)–(e)).

Again, however, Parrish cites no Supreme Court law at all. *See* Pet. at 8. As with Claim One, he does nothing more than regurgitate the standard for habeas review without ever describing *how* the state court's decision was (in any way) contrary to federal law. For this reason alone, his claim is insufficient and must be denied. *See* 28 U.S.C. § 2254(d); *see also Stevenson*, 531 F. App'x at 580 ("Stevenson fails to identify, however, the specific precedent on which he relies. . . . Under AEDPA, if there is *no* clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail."); *House*, 527 F.3d at 1022 ("We likewise reject Mr. House's attempt to extrapolate clearly established law from general equal protection principles in the absence of a Supreme Court holding on point. . . . To demonstrate that the law is clearly established, Mr. House must do more than identify a generalized legal

12

principle."); *Jennings*, 1999 WL 47010, at *6 ("Jennings offers only a conclusory statement in support of this argument-he fails to explain how the failure of the appellate court to allow Jennings's habeas counsel to intervenue [sic] rendered his trial fundamentally unfair, and he cites no case law in support of his contention.").

Either way, the state court's ruling was correct (for *at least* three reasons).

*First*, as the state court noted, Parrish conceded—on the record and at trial—that he was satisfied with his lawyer. *See* Opinion Denying Rule 3.850 Motion at 13 (citing Exhibit J., Partial Trial Transcript, Volume VI; JOA, pp. 851–56). And, while a habeas petitioner's in-court concession that he's satisfied with his lawyer is not always dispositive—Parrish, after all, could have discovered the defective performance only later—in this case, Parrish (by his own admission) knew about these witnesses *when he declared his satisfaction*. And yet, despite knowing about these witnesses, he *still* told the judge he was satisfied with his lawyer. The Eleventh Circuit has routinely pointed to similar concessions in rejecting the ineffectiveness claims of habeas petitioners. *See Morrow v. Warden*, 2019 WL 16949724, at *1 (11th Cir. Apr. 5, 2019) ("Morrow's statements at the plea colloquy, both of which indicate that he was pleading guilty voluntarily, he understood that he was facing a sentence of life imprisonment without the possibility of parole, and he was satisfied with his attorneys' representation. Accordingly, reasonable jurists would not debate that Morrow's plea was voluntary and his counsel did not coerce him."); *Milligan v. United States*, 213 F. App'x 964, 966 (11th Cir. 2007) ("Milligan did not assert ineffective assistance of trial counsel prior to his direct appeal. In fact, he stated he was satisfied with his counsel at his plea colloquy."); *accord Shapley v. Thomas*, 2014 WL 4470700, at *11 n.11 (N.D. Ala. Sept. 4, 2014) ("Specifically, Shapley's ineffective assistance of counsel claims are belied by his own

13

testimony at his guilty plea hearing in which he testified he was satisfied with his attorney and his attorney had done a good job.").

*Second*, Parrish does not challenge the state court's finding that he "knowingly and intelligently waived his right to call witnesses." Opinion Denying Rule 3.850 Motion at 13; *see generally* Pet. Parrish has thus waived any argument that this determination was unreasonable. *See Landers v. Warden*, 776 F.3d 1288, 1296 (11th Cir. 2015) (Marcus, J.) (holding that the petitioner waived the claim because "he failed to present this claim before the district court"); *Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013) ("A habeas petitioner must present a claim in clear and simple language such that the district court may not misunderstand it.").

In any case, even a cursory review of the trial transcript shows both that (1) Parrish admitted he had no such alibi witnesses and (2) Parrish wanted his wife to testify about his *character*, not about any *alibi*. *See* Trial Transcript at 1–2. The relevant portion of the colloquy went like this:

| | |
|---|---|
| The Court: | Mr. Parrish, are there any Defense witnesses that you asked your lawyer to list, locate, or call as witnesses on your behalf? Other than you, if you decide to testify, that's always a given. |
| The Defendant: | My family. My wife. |
| The Court: | Are they witnesses to what happened here? |
| Mr. Raudt:[5] | They're character witnesses. They're character witnesses, right, Mr. Parrish? |
| The Defendant: | Of my not doing what they say I was doing. |
| The Court: | But they weren't there when they say this happened; right? |
| The Defendant: | My wife was at the house. This supposed [sic] to have happened at my daughter [sic] house, but they said it was at my house. |

---

[5] Parrish's defense counsel.

14

| | |
|---|---|
| Mr. Raudt: | Mr. Parrish, don't talk about the facts of the case or what you believe. It would be one thing if somebody could say they saw you do something; it's another thing for them to say they didn't see you do something. |
| The Defendant: | What I'm saying is, I was accused of something that never happened at my house, and I went to my daughter [sic] house and I was accused at her house. |
| Mr. Raudt: | We're going to have all that covered on cross-examination, Mr. Parrish. |
| The Defendant: | That's all I know. |
| The Court: | But you're not saying that you want to call your wife as a witness, are you? |
| The Defendant: | Oh, on my behalf? |
| The Court: | Yes, in the Defense case. |
| The Defendant: | On my behalf, knowing that I'm an innocent man. |
| The Court: | But she can't give that opinion. |
| The Defendant: | Okay. Well, *I don't know nothing else about anybody else*. |
| The Court: | All right. |
| Mr. Raudt: | Also, the other things you have asked me, we can't have people come in and testify that your stepdaughter is a liar or the girls are liars, that's not allowed either under the rules. Do you remember I went through that with you? |
| The Defendant: | Yes. |
| The Court: | All right. So there are no other Defense witnesses; correct? |
| Mr. Raudt: | That is correct, Judge. |

*Id.* at 2–3 (emphasis added).

Parrish's lawyer cannot be blamed for failing to call five witnesses that, at the trial, Parrish himself agreed not to call. *Cf. Henyard v. McDonough*, 459 F.3d 1217, 1245 (11th Cir. 2006)

15

(denying ineffective assistance claim for failure to uncover evidence of sexual abuse in childhood where the defendant denied a history of sexual abuse); *see also Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, ***if ever***, second guess." (emphasis added)).

*Third*, even if these witnesses had existed—and even if Parrish had instructed his lawyer to call them—Parrish can show no prejudice because, as the state court correctly concluded, "the defendant fails to specify what each particular witness would have testified to and how such testimony would have reasonably made a difference in the outcome of his trial . . . .The defendant also fails to state these witnesses were available for trial." Opinion Denying Rule 3.850 Motion at 12. In his Petition, Parrish says that the five witnesses would have "accounted for practically every minute of petitioner's day (during the time he was alleged to committed [sic] the crimes)" Pet. at 9, which was a *four-month* period "between . . . December 1, 2011, and March 31, 2012," *id.* at 5–6. But Parrish never even suggests that the state court was "unreasonable" in concluding that his claim should be denied because he failed to provide any details about what these witnesses would have said. *See generally* Pet. Nor could he. After all, how can we know whether the witnesses' testimony would have been as persuasive as Parrish now claims—so compelling, in fact, that they would have impelled twelve people who voted to convict him to change their minds and acquit—without knowing what they would have said?

For this reason, federal habeas courts regularly permit state courts to require some showing of what the petitioner (or his uncalled witnesses) would have said. *See, e.g.*, *Vega-Encarnacion v. United States*, 993 F.2d 1531, 1535 (1st Cir. 1993) ("What is lacking, obviously, is any indication of exactly what appellant's testimony would have been. . . . In the absence of this kind of

specificity, it is impossible to determine that, but for counsel's alleged errors, the result below would have been different."); *Marquez v. United States*, 2013 WL 12336140, at *33 (S.D. Fla. June 17, 2013) ("Here, Marquez makes no mention of what he would have testified to that would have altered the result of his case. Thus, Marquez fails to satisfy the second prong of *Strickland*."); *Turman v. Jones*, 2017 WL 2222380, at *18 (N.D. Fla. Apr. 17, 2017) ("Petitioner's general assertion that he would have refuted Katie's testimony and testified as to his own version of events is insufficient to show a reasonable probability the jury would have discredited not only Katie's testimony, but Scott Wilson's testimony, if Petitioner had testified.").

Claim Two, in sum, should be denied.

## EVIDENTIARY HEARING

Because Parrish fails to challenge *any* of the state court's *factual* findings, an evidentiary hearing would be a waste of everyone's time. And so, his request for an evidentiary hearing should be denied. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").

## CERTIFICATE OF APPEALBILITY

A certificate of appealability should issue only when the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). But where, as here, the district court has rejected the petitioner's claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Parrish's claims are plainly meritless—and no reasonable jurist is likely to disagree that his Petition is (facially) insufficient. His request for a certificate of appealability, therefore, should be denied.

\*\*\*

All of that said, even when a petition's futility is "clear from the face of the petition itself," *Paez*, 947 F.3d at 654, a district court should provide the petitioner "ample notice and an opportunity to explain [why the petition should not be dismissed]," *id.*; *see also Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019) (holding that the district court did not err by *sua sponte* dismissing an untimely § 2254 petition because the court provided the petitioner with "adequate notice and an opportunity to respond"); *Shelton v. United States*, 800 F.3d 292, 295 (6th Cir. 2015) (holding that the district court erred by *sua sponte* dismissing habeas petition as untimely because the petitioner did not have an "opportunity to challenge the arguments that the district court invoked in finding the motion untimely"); *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998) (holding that plaintiff "was afforded both notice and a reasonable opportunity to oppose" the finding of procedural default when he was given a chance to object to the magistrate judge's Report and Recommendation, which "placed [him] on notice that procedural default was a potentially dispositive issue").

After careful review of the Petition, the record, and the governing law, the Court hereby **ORDERS AND ADJUDGES** that, **by October 14, 2020**, the Petitioner may respond to the deficiencies the Court has identified in this Order. If, by that date, the Petitioner does not either remedy those deficiencies by amending his Petition or else adequately explain those deficiencies in a written response, the Court will deny the Petition without further notice.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of September 2020.

_____
**ROY K. ALTMAN
UNITED STATES DISTRICT JUDGE**

cc:    Steven Parrish, *pro se*